## Case No. 17,823.

### WILSON et al. v. The MARY.

[Gilp. 31.] [1]

District Court, E. D. Pennsylvania. Dec. 12, 1828.

PUNISHMENT OF SEAMEN — POWERS OF MASTER — IMPRISONMENT IN FOREIGN JAILS— ADVICE OF CONSUL.

1. The master may confine a refractory seaman on board of his vessel. inflict reasonable personal correction, or discharge him without payment of his wages, according to the enormity of his offence.

[Cited in Wilkes v. Dinsman, 7 How. (48 U. S.) 129.]

2. The practice of imprisoning disobedient seamen in foreign gaols is of doubtful legality, and to be excused only by a strong case of necessity.

[Cited in Jordan v. Williams, Case No. 7,528; The William Harris, Id. 17,695; Jay v. Almy, Id. 7,236; Wilkes v. Dinsman, 7 How. (48 U. S.) 122; The Elwin Kreplin, Case No. 4,427.]

3. If the imprisonment of a seaman in a foreign port is improper, the expenses of it, or of the employment of a person in his stead, are not to be deducted from his wages.

4. The advice of an American consul, in a foreign port, gives to the master of a vessel no justification for an illegal act.

[Cited in The William Harris, Case No. 17,-695; Jay v. Almy, Id. 7,236; Tingle v. Tucker, Id. 14,057; The Elwin Kreplin, Id. 4,427; Coffin v. Weld, Id. 2,953.]

The libellants [Edward Wilson and John Richards] were seamen on board of the American brig Mary [Dodd, master], which arrived in the harbour of Port-au-Prince on the 28th August, 1828, and remained there until the 22d October, following. On several occasions, while the brig lay in port, the crew were guilty of much insubordination, and the captain, after consulting the American commercial agent, as he alleged, caused the libellants to be confined in the common gaol. This was done more than once, and, the last time, for a period of three weeks, during which a person was employed to do their work. On the arrival of the vessel at Philadelphia on her return, the captain refused to pay the libellants the full amount of their wages, having deducted therefrom, and charged them with, the whole expenses incurred on account of their imprisonment at Port-au-Prince, and the sum paid to the person employed there in their stead. The present proceeding was instituted to recover the sum thus withheld.

Mr. Grinnell, for libellants.
Mr. Phillips, for respondent.

HOPKINSON, District Judge. The practice of imprisoning disobedient and refractory seamen in foreign gaols is one of doubtful legality. It is certainly to be justified only by a strong case of necessity. It is not among the ordinary means of discipline put into the hands of the master. I am inclined to think there should be

[1] [Reported by Henry D. Gilpin. Esq.]

danger in keeping the offender on board, or some great crime committed, when this extreme measure is resorted to. It should be used as one of safety, rather than discipline, and never applied as a punishment for past misconduct. The powers given by the law to the master, to preserve the discipline of his ship, and compel obedience to his authority, are so strong and full, that they can seldom fail of their effect; they should be clearly insufficient, before we should allow the exercise of a power which may so easily be made an instrument of cruelty and oppression, and may be so terrible in its consequences. A confinement in an unwholesome gaol, in a hot and pestilential climate, may be followed by death or some disabling disease. In this case the libellants were taken from the prison when the brig sailed on her return; and although one of them was able to do his duty, the other was prevented by sickness for the whole voyage. I would rather altogether deny a power which can be so seldom necessary, than trust it in hands, in which it is so likely to be abused, and so difficult to be regulated. The master may, without the aid of foreign police officers and dungeons, in which he cannot control, even if kindly disposed, the treatment of his men, take measures of great strength to enforce the discipline of his ship. He may there confine a refractory sailor; he may stop his provisions; he may inflict reasonable personal correction, according to the enormity of the offence and the obstinacy of the offender; and, if he be incorrigibly disobedient and mutinous, he may discharge him, and withal he incurs a forfeiture of his wages. A firm and judicious exercise of these powers can hardly fail of reducing the most perverse to obedience.

Without deciding the general question, whether the master of a vessel may, under any circumstances, imprison a seaman in the gaol of a foreign port, under the control and discipline of a foreign police and its officers, for the mere maintenance of his own authority, I will examine the facts of this case under the principles above mentioned. (The judge thought the evidence was not such as to warrant the imprisonment, and proceeded.) If the imprisonment in this case was unauthorised, the men cannot be charged with the expenses attending it; especially with their boarding which the master was bound to provide. Nor is it just to forfeit their wages; or, what is the same thing, charge them with the pay given to another hand. They have been punished for their misconduct, by their imprisonment, and to inflict these penalties would be to double the punishment.

I will take this occasion to notice an error which, I fear, has frequently, as in this instance, misled our masters of vessels. They seem to believe that they may do any thing, provided they can obtain the assent of the consul to it; which assent consuls are apt to give with very little consideration. When the master, on his return, is called upon to answer for his conduct; he thinks it is enough to produce a consular certificate approving his proceedings; or

to say, he consulted the consul, or acted on his advice. This is altogether a mistake. It is certainly a very prudent precaution to consult the consul, in any difficulty, and if the case were fully and fairly stated to him, and his advice faithfully pursued, it would afford a strong protection on the question of malicious or wrongful intention, but it can give no justification or legal sanction to an illegal act; nor deprive those, who have been injured, of their legal rights and remedies.